Go ahead. Good morning, Your Honors. My name is Danny Yaldrin with Federal Defenders of San Diego. On behalf of Erika Plancarte, I will try to keep track of my own time for rebuttal. Okay. Prosecutor undermined his 90-day recommendation for Erika Plancarte in three ways. First, he argued that a previous six-month sentence failed to deter her. Second, he pointed the district court to a sentencing enhancement that, until then, no one thought could conceivably apply to this case. And third, he provided a slanted overview of her criminal history while omitting all mitigating information. So, counsel, in this case, the defendant argued for a below-guidelines range, correct? No, Your Honor. She argued for the bottom of the guidelines. The guidelines were zero to six months, and she argued for that. Oh, that's right. Okay. So, but didn't that open up the door for the government to come in and rebut that? And isn't that consistent with Farias Contreras? Could you respond to that? Yes, Your Honor. So, two things there. One, as the government acknowledges, they prepared the sentencing memorandum before even seeing Ms. Plancarte's sentencing memorandum. So, it wasn't responding, like in Farias Contreras, to particular points raised by Ms. Plancarte. But second, under Farias Contreras and under Heredia, which Farias Contreras adopts, those responses still have to be fair and tethered to obligations under the plea agreement. So, yes, the government can say, as the government did in Mochella, for example, the defendant's request is too low. Here's why our recommendation is better. Here's why this is essential. That was a word they used in Mochella. But here, this was just ad hominem attack. And when you combine that with, for example, the prosecutor- Wait, hold on. Why was it an ad hominem attack? Because, I mean, there's nothing that they said that was incorrect, right? Well, I guess that's, I mean, it is true that the, I mean, almost by definition, the prior sentences, whatever they were, hadn't deterred her because she did it again. That's an argument, though, Your Honor. It's not like Ms. Plancarte was committing offense after offense after offense through her life. So to say that this previous six-month sentence in her 20s failed to deter her, right after saying, we recommend a 90-day sentence, premised on the idea of deterrence, it is hard to take that 90-day recommendation seriously. You know, we are all lawyers. We are all taught how the arrangement of words and sentences really matters. And so when you say, we recommend 90 days because that provides deterrence, by the way, a previous sentence twice as long and didn't deter her, the implication seems rather clear. Before I talk about the 90-day sentence, could you address the appellate waiver? So the appellate waiver had two exceptions which don't apply here. One was appeal a custodial sentence above the high end of the guidelines range, or if there's an effective assistance of counsel. Why isn't the appellate waiver effective in this case? Because the government breached the plea agreement, Your Honor. And so that wasn't one of the exceptions to the appellate waiver? So do you have a case that it didn't seem like it was really briefed? That was not briefed, Your Honor. Traditionally, how this court has handled it is that it's not been a term in the the court decides rules against the defendant, then that appellate waiver is enforced. So you don't have a case that says, despite the appellate waiver, we can hear your appeal even though you're not, you don't fall into either of the two exceptions. So what's the point of an appellate waiver then? Because the plea agreement is a contract. So if one party breaches that contract, it is no longer enforced. This has not been a clause in any prior breach case raised by this court. The government didn't challenge this in any of the briefing. So it has waived that argument. It was raised at the district court, though. I mean, she filed papers arguing that the government had breached the plea agreement, correct? Correct. Before the argument. Correct. And the district court didn't say yes. So it was preserved in that sense. Well, but the district court wouldn't have been addressing the appellate waiver portion. I mean, I guess I sort of agree with you that we've traditionally done this, but now I'm wondering why we've done it. Because I guess you're just saying basic contract principles. Right. If one party breaches, then that gets anybody out of it. The contract is null. And there's language in the plea agreement saying, you know, it doesn't. We have to have a case that says that. Do we have a case that says that? This issue has never come up in any of the breach cases, and I do feel confident I read them all. But I will double check that while the government is presenting. But you're saying the appellate waiver has no effect whatsoever. Is that right? Not at all, Your Honor. I'm saying when the government breaches the contract, the plea agreement is null. And that's like the central term of the, you know. But isn't that always when somebody has an appellate waiver and appeals, they're saying a breach of the contract? Is there some other argument that they make? Uh, no, Your Honor. They're saying we can't. Okay, so it doesn't mean anything. The appellate waiver is meaningless. I firmly disagree, Your Honor. If you, Ms. Blancarte can't appeal her sentence. She can't appeal her conviction itself, if that was an issue. If there were pre-trial motions, she cannot appeal those. Well, she could if the government, I mean, presumably if this breach, if you were correct about the breach, then is your position that then she could appeal everything else? No. You would still say that the plea agreement, the appellate waiver, is still effective as to those other issues? Well, and the sentence is vacated, and this goes back to the district court. So there's no other issues to appeal. She gets a new sentencing hearing. Correct. Receiving, with a new judge. Her sentencing judge has retired, so that's a reality. Well, anyway. So, look. Well, go ahead. So the government argues, well, we said five times, I think, that we were seeking a 90 days in custody, and so we were compliant with the terms of the plea agreement. Why do you disagree with that? Because in Heredia, the government said 14 times in their pre-sentencing papers, we recommend this sentence, and the court still found breach. So in Heredia, they had, the government argued that they had much more pejorative terms, that it was half the good thief, not that Whitney was a good thief, that there were repeated and inflammatory references to criminal history, and they had distinguished Heredia that way. Do you disagree? I do, Your Honor. So I don't think the rhetoric, especially when you consider how low the guidelines here were, was that different from Heredia, to pick one example. You have them saying, Ms. Bancarte has a pattern and practice of a failing to disrespect the law. They were describing her priors, which were crimes of poverty in her 20s, as felonies for embezzlement and fraud. And Heredia and Fras Contreras also teach, it is a factor this court must consider if the government omits all mitigating information. And that's what you have here. So in Heredia, one of the things that cut in favor of breach was there was no mitigating information in any of the sentencing papers. And that was particularly relevant because it was a fast-track case like here. This court held in Heredia that in a typical fast-track case, there was no need for the government to colorfully recount criminal history and pejoratively editorialize. And again, this was a fast-track case. The government had, it was a commonplace fast-track case, according to the government. Nor does the government dispute in their answering brief that this was not a particularly harsh recommendation. You, you referenced the PSR's reference to, to L, the guidelines to LI.1B4. And the government argues that they were saying that, in fact, well, the first line is the defendant advised her cousin asked her to smuggle his wife and children of the cousin's friend, indicating that the minors were not unaccompanied but were actually accompanied. Can you unravel that for us? Because you seem to think that that was a violation. I do, Your Honor. It was a violation. If the government had just had that first sentence saying the children, the material witness was the mother of her children, that's fine. What the government then did is just dropped a compare site to one part of the PSR suggesting this enhancement for unaccompanied minors applies, then mentioning a part that suggests it doesn't, and then just citing the enhancement. And it says to the reader, do with this what you will. It's a mess. That does not resolve confusion. That creates it. You do want to save some time. I would love to, Your Honor. Judge Nelson. I will hear from the government. Good morning, Your Honors. May it please the court, Amy Wong on behalf of the United States. Planned CART should not get a second chance at sentencing because the government did not reach the plea agreement. What was the scenario? How did the memorandum go down? When the government filed its sentencing chart, had the defendant already filed her sentencing chart? The defendant had filed her sentencing chart correct. So the government had the sentencing chart when they filed their sentencing chart? Yes, it was on the docket and approximately 30 minutes later the government filed its sentencing documents. Was the government aware that Ms. Boncarta was going to ask for the lowest guideline sentence? I don't believe the underlying prosecutor was aware that that's what she was going to file, but where the guidelines were undisputed and it was a zero to six-month guideline range, it was anticipated that the defense would ask for a more lenient sentence than what the government was allowed to ask for by the pre-agreement. So the government was trying to anticipate preemptive arguments. Correct. Was that why it was necessary for the government to set forth its footnote in the sentencing chart? So the footnote in the sentencing chart explains somewhat the sentence recommended in the sentencing chart and then the separate memorandum further explained what the government considered under the 3553A factors in support of its 90-day recommendation as permitted by the plea agreement. So why didn't the government just say, you know, here we negotiated a plea agreement? We agreed that a 90-day sentence was appropriate here. I think it's best practice to be able to support your argument, especially when the pre-agreement allows... So what's the purpose of the plea agreement then? To give the government an opportunity to recommend 90 days and then oppose any additional downward adjustments, departures, and variances. And that's exactly what the prosecutor did here. The government could have asked for negotiated a tougher sentence, right? Potentially, your honor. But the plea agreement gave Ms. Plancarte a chance to argue for whatever she wanted and gave us a chance to oppose any more lenient sentence than a 90-day sentence. And so the government did ask for a 90-day sentence 11 times throughout the course of sentencing, affirmatively recommending over and over again 90 days in custody, and then tethered its additional arguments for the nature and circumstances of the offense, Ms. Plancarte's history and characteristics to that recommendation and in opposition of her probationary recommendation. So does an appellate waiver have any effect at all or is it just surplusage? So your honor, we believe that because there was no breach, the appellate waiver would have an effect and this court should dismiss the appeal. That doesn't answer Judge Akuta's question? I think we agree with the defense here that if there was a breach of the agreement, where we don't concede there was, then the case would get sent back for resentencing and then the appellate waiver would again have effect if that sentence was below the high end of the guidelines. So in your view, just because there's an appellate waiver doesn't preclude the defendant from raising this breach of contract argument? Correct, your honor. Is there a case law on that? I haven't looked at that, your honor. It's just kind of been, we've all accepted it for decades and... That's my understanding. It kind of makes sense, right? Right, it's a contract and if the contract is unenforceable, then we can't enforce the appellate waiver. Right, but it sort of depends on the breach. I mean, I guess here you're just saying, no, this is clearly a material breach, but not any breach. I suppose there could be cases where they're arguing a breach and you'd say, well, even if we did breach it, that wouldn't have been material. So that wouldn't have invalidated, that wouldn't have required resentencing. Right, I think here it's specific to the sentencing issue and so if there was a breach at sentencing, it gets back for resentencing before a new judge. But the rest of the terms of the plea agreement and the appellate waiver would still apply in front of that new judge. Can I ask about the standard of review? In Farias Contreras, we said generally we review these for undeniable review, which I guess, query what generally means. I mean, obviously it would be plain error if it wasn't raised below as it wasn't raised in Farias Contreras. Here it was raised below, but you've suggested that there's clear error. I'm not sure that that's implicated here, but I was interested in where you think we would apply clear error review. I think the case law before Farias Contreras was a little bit more, it was unclear as to how the court has addressed breach cases. In some cases, it was clear error. In other cases, it was de novo, but it's our position that if the court even applies de novo in this case, we still don't have a breach here. And where would we apply? I mean, because normally I see why it would be de novo review. I'm almost wondering if this is a mixed question of fact and law, because as to whether there's ultimately a breach, that would be reviewed de novo. But this is a fact-specific inquiry, and it seems to me that in certain circumstances, the district court would, and I don't know if that happened here, but in certain circumstances, the district court could make factual findings or factual presumptions that we would then review for clear error. Is that, would that be the appropriate framework to look at this, or have you, you're just saying it doesn't matter here? We're saying it doesn't matter here, and to the extent that this court is reviewing the district court's factual findings, the district court did make findings here that there was no breach, that it's a adversarial system. But that there was no breach seems like a legal question. But what would be some factual findings that the district court made here, or were there any? I think the district court, you know, acknowledged that the government was supposed to hold the balance true with its arguments, and that's what the government did. It didn't overstep. Let me ask you just on that. I mean, one of the things they argued in their brief was that the government didn't bring out any mitigating circumstances at all, just emphasized her background and her criminal conduct and whatnot, but said nothing about, you know, any mitigating circumstances. Sure. And, Your Honor, I don't believe there's anything that requires us to specifically address mitigating circumstances. You just said, but the district court found that the government balanced, you know, presented a balanced view on the basis for its argument, but it really didn't emphasize any mitigating circumstances, did it? The district court found that on one hand, we have the defense counsel who advocates for their client, and on the other hand, we have the government who holds the balance true. And while we always consider every 3553A factor, there's no requirement that we specifically address mitigating circumstances if those circumstances don't support our position at sentencing. Whereas in this case, we supported our position at sentencing by going through her criminal history accurately and without embellishment, without sensationalizing it, and that's how we affirmatively recommended 90 days up to 11 times. And just one more point, Your Honors. I would like to distinguish Heredia from this case, because it's easily distinguishable. There, it was a united front plea agreement, where the court was bound, if it accepted the party's stipulated recommendation. So there, there really wasn't any reason for the government to argue the inflammatory arguments it made about Heredia's criminal history. Here, the prosecutor didn't add anything inflammatory. It was very straightforward. She had two felonies for embezzlement and fraud, didn't get into the history of the underlying conduct of those two felonies. And so, we really have a very separate and distinct situation from Heredia, and that's why that case does not apply. How do we distinguish inflammatory? Because that comes up in some of the other cases. I mean, I tend to agree with you, but do we just, in this case, I tend to agree with you, but how, what kind of a test can we adopt there? I mean, because they're arguing it was inflammatory in the sense that you expounded upon, hey, this hasn't, she did this however many years ago in her youth, and you said that, you know, she's a recidivist. That, they view that as inflammatory. How do we, I mean, is that just how we respond to the circumstances, or is there a way to differentiate between inflammatory truthful statements and uninflammatory truthful statements? Sure. Or should we just say, the only question we ask is whether it was truthful or not? No, I think this court set out a test in Farias Contreras where you look at the proportionality of the statements, the sequencing, the severity, and the purpose to tether it to the government's recommendation, where Farias Contreras, you know, had comparisons with drug dealers to slaves, vampires, and murderers. The court found that that was a little bit too inflammatory, but even then it was a close question. So the government says that's because of the use of pejoratives, and is that to answer Judge Nelson's question? Are you saying if you use pejoratives in identifying, you know, in your argument, then that's inflammatory? It could be inflammatory, but here there were no pejoratives. I think the defense takes issue with our use of the word worrying and the use of the word orchestrated, but those were factually accurate descriptors of Ms. Plancarte's conduct. She did orchestrate this human smuggling event where she called the material witness ahead of time, met up with her, worked on the cover story. She was the one who received the false identification documents for the two minors and then planned to use her own daughter's ID to smuggle a third minor in. She had control of those IDs the entire time they made their way to the port, and at the end of the day, she's literally in the driver's seat. So she was the one who orchestrated this. You've run out of time. Unless the court has any further questions, we'd ask the court to dismiss the appeal. Thank you. You have a few seconds left for rebuttal. Thank you, Your Honor. I have five points, and I'll try and get through them quickly. Farias Contreras did hold that the standard of review is de novo if the defendant objects. It said that did not apply there. It was on plain error because the defendant did not object. The prosecutor is not required to mention mitigating the information, but Heredia and Farias Contreras hold clearly that it is a factor that is considered in the breach analysis. A total omission of mitigating information cuts in favor of breach. Farias Contreras adopted Heredia's standard even in cases where both sides can make arguments. And the test here, I want to be clear, is from the defendant's perspective. What did the defendant reasonably expect to get from the government when she bargains away her right to trial and to put on witnesses? Your Honor, our criminal justice system is run on plea agreements. This was a sentencing arrangement that allowed the district court the ultimate decision about what sentence to impose, correct? This wasn't a... A C plea. Yeah, a C plea. Correct. The government could have stood up there and said, 90 days, 90 days, that's all we want, just give 90 days. And the judge could say, look, I looked at her record and everything, I think it should be six months. And Your Honor, correct, the judge came in saying my tentative is six months in this hearing. And if the prosecutor here had said 90 days, 90 days, 90 days, nothing else, I wouldn't be here. What the prosecutor did is said 90 days because of deterrence. By the way, a previous six month sentence didn't deter her. The implication there is clear. I'm way out of time, but if Your Honors have any other questions. Any other questions? Okay. Thank you. We thank both sides for their arguments. The case of United States v. Erica Maria Platt and Card is submitted.
judges: PAEZ, IKUTA, NELSON